IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA22-491

Filed 16 May 2023

Nash County, Nos. 20CRS51425-26

STATE OF NORTH CAROLINA

v.

TYQUEAN QUA'SHED SHARPE, Defendant.

Appeal by Defendant from Judgments entered 14 July 2021 by Judge Thomas D. Haigwood in Nash County Superior Court. Heard in the Court of Appeals 22 February 2023.

*Attorney General Joshua H. Stein, by Assistant Attorney General Kellie E. Army, for the State.*

*Shawn R. Evans for Defendant-Appellant.*

HAMPSON, Judge.

### Factual and Procedural Background

Tyquean Qua'shed Sharpe (Defendant) appeals from Judgments entered 14 July 2021 upon jury verdicts finding him guilty of Possession of a Firearm by a Felon and Misdemeanor Resisting a Public Officer. On appeal to this Court, Defendant only challenges his conviction for Possession of a Firearm by a Felon. As such, we conclude there was no error in Defendant's Misdemeanor Resisting a Public Officer conviction and limit our analysis to the sole argument raised by Defendant. The Record before

us tends to reflect the following:

On 14 September 2020, Defendant was indicted for Possession of a Firearm by a Felon and Misdemeanor Resisting a Public Officer. The matter came on for trial on 13 July 2021. The State's evidence presented at trial tends to reflect the following:

On 11 May 2020, the Problem Oriented Response Team (PORT) of the Rocky Mount Police Department, whose purpose is to focus on high crime areas, was monitoring social media. PORT was aware of several shootings in the area and was attempting to prevent retaliatory shooting by locating individuals that may have been involved in the incidents. PORT identified Defendant as one of those possible individuals. Officers with PORT observed Defendant—via social media—"looking at weapons, firearms, ammunition, things of that nature" at a local retail store. Shortly thereafter, the Officers with PORT located Defendant and initiated a traffic stop; Corporal Chad Creech (Corporal Creech) and Officer Cameron McFadden (Officer McFadden) both testified the stop was conducted to prevent the occurrence of "retaliation shootings." The vehicle stopped at a gas station. Defendant was one of four occupants inside the vehicle, sitting in the front passenger seat. Once the vehicle was stopped, Defendant exited the vehicle and went inside the gas station. Officer McFadden attempted to conduct a frisk of Defendant, but Defendant refused to cooperate; did not comply with the officer's commands; and began resisting. Eventually, Officer McFadden resorted to tasing Defendant in order "to get him to comply." Defendant was then handcuffed and detained in a patrol vehicle.

After Defendant was detained, Corporal Creech conducted a search of the vehicle and discovered "a box of bullets in the middle of the floorboard, in between the front – front driver and front passenger, in the middle; a bottle of Hennessy in the front seat; and there was a rifle in the back seat." Further, Corporal Creech testified, the rifle "was at an angle, not longways, but like facing the driver and the passenger, like in between the driver and the passenger, facing up towards the back passenger, not laying flat on the seat." No DNA evidence or fingerprints were recovered from the firearm or introduced into evidence.

At the close of the State's evidence, Defendant moved to dismiss the charge of Possession of a Firearm by a Felon for insufficient evidence. The trial court denied the Motion. Defendant presented evidence, including the driver of the vehicle testifying the rifle found in the backseat belonged to Qadarius Grimes (Grimes), one of the other occupants of the vehicle. Grimes testified that the rifle found in the vehicle belonged to Grimes, and further, he stated he told the officers at the time of the traffic stop the rifle belonged to him. Defendant testified the vehicle belonged to his mother. Defendant testified he did not have a license and his mother only permitted use of the vehicle if someone else was driving. Defendant testified his mother had required him to bring the vehicle home after she saw Defendant driving the vehicle earlier that day via livestream on social media. At the close of all the evidence, Defendant renewed his Motion to Dismiss. The trial court again denied the Motion. On 14 July 2021, the jury returned a verdict finding Defendant guilty of

Possession of a Firearm by a Felon and Misdemeanor Resisting a Public Officer. That same day, the trial court entered two Judgments against Defendant. The first Judgment sentenced Defendant to a 17 to 30 month active sentence for the Possession of a Firearm by a Felon conviction. The second Judgment, for the Misdemeanor Resisting a Public Officer conviction, sentenced Defendant to a consecutive 60-day sentence to be suspended for 18 months of supervised probation upon release from his active sentence. Defendant provided Notice of Appeal in open court.

## Issue

The dispositive issue on appeal is whether the trial court erred in denying Defendant's Motion to Dismiss the charge of Possession of a Firearm by a Felon.

## Analysis

Defendant contends the trial court erred in denying his Motion to Dismiss the charge of Possession of a Firearm by a Felon due to insufficiency of the evidence. Specifically, Defendant contends the State failed to establish his constructive possession of the firearm located in the backseat of the vehicle. We agree.

We review a trial court's denial of a motion to dismiss de novo. *State v. Smith*, 186 N.C. App. 57, 62, 650 S.E.2d 29, 33 (2007) (citation omitted). However, "[u]pon defendant's motion for dismissal, the question for the Court is whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense. If so, the motion is properly denied." *State v. Fritsch*, 351 N.C. 373, 378, 526 S.E.2d

451, 455 (2000) (citation and quotation marks omitted). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Blake*, 319 N.C. 599, 604, 356 S.E.2d 352, 355 (1987) (citation and quotation marks omitted). "Evidence is not substantial if it arouses only a suspicion about the facts to be proved, even if the suspicion is strong." *State v. Sumpter*, 318 N.C. 102, 108, 347 S.E.2d 396, 399 (1986) (citing *State v. Malloy*, 309 N.C. 176, 305 S.E.2d 718 (1983)).

"In making its determination, the trial court must consider all evidence admitted, whether competent or incompetent, in the light most favorable to the State, giving the State the benefit of every reasonable inference and resolving any contradictions in its favor." *State v. Rose*, 339 N.C. 172, 192, 451 S.E.2d 211, 223 (1994) (citation omitted). If the evidence "is sufficient only to raise a suspicion or conjecture as to either the commission of the offense or the identity of the defendant as the perpetrator, the motion to dismiss must be allowed." *Malloy*, 309 N.C. at 179, 305 S.E.2d at 720. "Only defendant's evidence which does not contradict and is not inconsistent with the state's evidence may be considered favorable to defendant if it explains or clarifies the state's evidence or rebuts inferences favorable to the state." *Sumpter*, 318 N.C. at 107-08, 347 S.E.2d at 399 (citations omitted).

N.C. Gen. Stat. § 14-415.1(a) provides: "[i]t shall be unlawful for any person who has been convicted of a felony to . . . possess, or have in his custody, care, or control any firearm . . . ." N.C. Gen. Stat. § 14-415.1(a) (2021). "In order to obtain a

conviction for possession of a firearm by a felon, the State must establish that (1) the defendant has been convicted of or has pled guilty to a felony and (2) the defendant, subsequent to the conviction or guilty [plea], possessed a firearm." *State v. Taylor*, 203 N.C. App. 448, 458-59, 691 S.E.2d 755, 764 (2010) (citations omitted). Here, Defendant does not contest his status as a felon.

Thus, the only question is whether there is evidence Defendant possessed the firearm in question on the date of his arrest.

> Possession of a firearm may be actual or constructive. Actual possession requires that the defendant have physical or personal custody of the firearm. In contrast, the defendant has constructive possession of the firearm when the weapon is not in the defendant's physical custody, but the defendant is aware of its presence and has both the power and intent to control its disposition or use. When the defendant does not have exclusive possession of the location where the firearm is found, the State is required to show other incriminating circumstances in order to establish constructive possession. Constructive possession depends on the totality of the circumstances in each case.

*Id.* at 459, 691 S.E.2d at 764 (citations omitted).

In this case, in the absence of any evidence Defendant had physical or personal custody of the firearm, the State proceeded on a theory of constructive possession. Therefore, the State was required to prove Defendant had the "power and intent to control" the disposition or use of the firearm. *Id.* On appeal, the State first contends the evidence supported a finding Defendant had exclusive possession of the vehicle because he was "custodian" of the vehicle. As such, the State contends it is entitled to an inference of constructive possession of the firearm sufficient to submit the

charge to the jury.

In particular, the State primarily relies on *State v. Mitchell* for the proposition:

> "[A]n inference of constructive possession can . . . arise from evidence which tends to show that a defendant was the custodian of the vehicle where the [contraband] was found. In fact, the courts in this State have held consistently that the driver of a borrowed car, like the owner of the car, has the power to control the contents of the car. Moreover, power to control the automobile where [contraband] was found *is sufficient, in and of itself*, to give rise to the inference of knowledge and possession sufficient to go to the jury."

224 N.C. App. 171, 177, 735 S.E.2d 438, 443 (2012) (quoting *State v. Best*, 214 N.C. App. 39, 47, 713 S.E.2d 556, 562 (2011)). Here, the State presented no evidence Defendant owned the vehicle.[1] Moreover, the evidence shows Defendant was not the driver of the vehicle. Nevertheless, the State contends Defendant was the "custodian" of the vehicle—notwithstanding the fact he was not driving the vehicle—and had exclusive possession of the vehicle because "Defendant's mother was the owner of the car and allowed him to use it if he had a driver." The State offers no support for this assertion.

However, in *State v. Mitchell*, the defendant was the driver of a borrowed car. *Id*. Likewise, in *Best*, cited by *Mitchell*, "the revolver was found in a van driven by Defendant[.]" *Best*, 214 N.C. App. at 47, 713 S.E.2d at 562. In fact, tracing back the

---

[1] In fact, the only evidence related to ownership was in Defendant's evidence the vehicle belonged to his mother.

quote relied on by the State from *Mitchell* reveals that in each case "custodian of the vehicle" referred directly to the *driver* of a borrowed vehicle. *See State v. Hudson*, 206 N.C. App. 482, 490, 696 S.E.2d 577, 583 (2010); *State v. Dow*, 70 N.C. App. 82, 85, 318 S.E.2d 883, 886 (1984). Indeed, none of these cases provide any definition or authority for what "custodian of the vehicle" means or from where the phrase is derived. Ultimately, we trace the roots of the *Mitchell* Court's quote to *State v. Glaze*, which makes no mention of "custodian of the vehicle" and stands for the proposition:

> The driver of a borrowed car, like the owner of the car, has the power to control the contents of the car. Thus, where contraband material is under the control of an accused, even though the accused is the borrower of a vehicle, this fact is sufficient to give rise to an inference of knowledge and possession which may be sufficient to carry the case to the jury.

24 N.C. App. 60, 64, 210 S.E.2d 124, 127 (1974). *Glaze* and its progeny may be read together to establish the driver of a borrowed vehicle is a custodian of the vehicle and has the same power to control the contents of the vehicle as the owner. In fact, on the other hand, this Court has at least suggested that where a defendant is only a passenger, "despite having legal ownership of the vehicle, defendant exercised no control over the car at the time the rifle was found." *State v. Bailey*, 233 N.C. App. 688, 693, 757 S.E.2d 491, 494 (2014).

Nevertheless, we presume, without deciding, the State's position is correct: that a passenger in a vehicle may also constitute a custodian of the vehicle when the passenger was the permitted user of the vehicle by the owner. Here, the evidence—

drawing inferences favorable to the State from Defendant's evidence—tends to show Defendant was permitted to use the vehicle by his mother. As such, the evidence could support an inference Defendant was a custodian of the vehicle. However, under our existing case law, the driver was *also* a custodian of the vehicle. As such, the evidence fails to show Defendant was in *exclusive* possession of the vehicle at the time the rifle was found. Moreover, then, the State is not entitled to any presumption of "knowledge and possession" of the firearm sufficient to submit the case to the jury.

While the evidence reflects Defendant was not in exclusive possession of the vehicle, the State may still establish constructive possession through evidence of "other incriminating circumstances." *Taylor*, 203 N.C. App. at 459, 691 S.E.2d at 764. Indeed, this case is analogous to *State v. Alston,* 131 N.C. App. 514, 508 S.E.2d 315 (1998). There, the defendant was the front seat passenger in a vehicle driven by the defendant's wife. *Id.* at 515, 508 S.E.2d at 316. The vehicle was owned by the defendant's brother. *Id.* at 516, 508 S.E.2d at 317. The firearm used to support the charge of possession of a firearm by a felon was found in the center console of the vehicle. *Id.* at 515, 508 S.E.2d at 316-17. With respect to constructive possession of the firearm, this Court observed: "Possession of an item may be either sole or joint; however, joint or shared possession exists only upon a showing of some independent and incriminating circumstance, beyond mere association or presence, linking the person(s) to the item[.]" *Id.* at 519, 508 S.E.2d at 318. This Court explained: "Both [d]efendant and his wife had equal access to the handgun, but there is no evidence

otherwise linking the handgun to [d]efendant." *Id.* at 519, 508 S.E.2d 319. Our Court concluded: "Accordingly, there is not substantial evidence in this record that Defendant had the possession, control, or custody of the handgun." *Id.* Consequently, we held the trial court should have dismissed the charge of possession of a firearm by a felon. *Id.*

Likewise, in *Bailey*, this Court held a charge of possession of a firearm by a felon should have been dismissed for insufficient evidence. *Bailey*, 233 N.C. App. at 693, 757 S.E.2d at 494. There, the defendant, the owner of the vehicle, was in the front passenger seat. *Id.* The rifle at issue was in the rear passenger area of the vehicle. *Id.* This Court concluded "the only evidence linking defendant to the rifle was his presence in the vehicle and his knowledge that the gun was in the backseat." *Id.*

Similarly, in the case *sub judice*, the evidence shows Defendant was not the driver of the vehicle, but sitting in the front passenger seat and the firearm was located in the rear passenger compartment. Unlike *Alston* and *Bailey*, here, there were four adults in the vehicle—with two in the rear seat, including a passenger in the seat behind Defendant where the rifle was found. Also, unlike *Alston* and *Bailey*—where there was evidence the defendants' wife and girlfriend, respectively, were the registered owners of the firearms—here, from the State's perspective, there

was no evidence of ownership of the rifle.[2]  In this case, then, as in *Alston* and *Bailey*, the evidence, taken in the light most favorable to the State, shows the only evidence linking Defendant to the rifle was his presence and awareness of the firearm in the car.  This evidence is insufficient to show Defendant was in constructive possession of the rifle.[3]

The State, however, contends there is evidence of additional incriminating circumstances: "Defendant was driving the car sometime earlier in the day, was observed examining weapons, and was among the individuals identified by PORT as a retaliatory shooting concern."[4]  The State contends these circumstances are sufficient to support a finding of constructive possession of the firearm.  We disagree.

Any linkage between Defendant and the rifle created by these circumstances is, at best, speculative and conjectural.  *See State v. Angram*, 270 N.C. App. 82, 87, 839 S.E.2d 865, 868 (2020) ("Although circumstantial evidence may be sufficient to prove a crime, pure speculation is not, and the State's argument is based upon

---

[2] The only evidence of ownership was in Defendant's evidence through the testimony of Grimes that the rifle belonged to him.  However, this evidence is not considered in our review of the Motion to Dismiss.

[3] The State cites to *State v. Wirt*, 263 N.C. App. 370, 822 S.E.2d 668 (2018), to contend Defendant's proximity to the firearm may constitute sufficient evidence of constructive possession.  However, in that case, the defendant was the driver of a pickup truck, which would create the inference of knowledge and possession.  *Id.* at 374, 822 S.E.2d at 671.  Further, the firearm was found under the front passenger seat and the defendant had been observed earlier riding in the front passenger seat.  *Id.* at 376, 822 S.E.2d at 672.  The Court also found incriminating circumstances from the evidence the defendant and his passenger had been involved in drug dealing using the truck.  *Id.*

[4] The State does not contend the bullets found in the center console constituted an additional incriminating circumstance linking Defendant to the rifle.  Indeed, it appears from the evidence the bullets were for a totally different firearm belonging to the driver of the vehicle.

speculation." (citation omitted)). There was no evidence Defendant was in possession—actual or constructive—of the rifle while he was driving the vehicle earlier in the day. It is highly speculative to assume the fact Defendant was observed examining or looking at firearms in a store means he later possessed the rifle. There was no evidence of any firearm purchase or that Defendant took any firearm from the store. There was no evidence the rifle was purchased at the store. The State also did not present evidence of DNA or fingerprints linking Defendant to the firearm. Finally, the fact Defendant was identified as a "retaliatory shooting concern" may well arouse suspicion Defendant was in possession of a firearm, but mere suspicion does not constitute sufficient evidence to survive a motion to dismiss. *See Malloy*, 309 N.C. 179, 305 S.E.2d 720 (If the evidence "is sufficient only to raise a suspicion or conjecture as to either the commission of the offense or the identity of the defendant as the perpetrator, the motion to dismiss must be allowed.").

In this case, the evidence, without more, is not sufficient to support a finding Defendant, while seated in the front passenger seat and one of four occupants, was in constructive possession of a firearm found in the rear passenger compartment of a vehicle not owned or operated by Defendant. Thus, the State failed to present sufficient evidence to establish Defendant's constructive possession of the firearm. Therefore, the trial court erred in denying Defendant's Motion to Dismiss for insufficient evidence. Consequently, we reverse the trial court's Judgment for the conviction of Possession of a Firearm by a Felon.

## Conclusion

Accordingly, for the foregoing reasons, we conclude there was no error in the 14 July 2021 Judgment for the conviction of Misdemeanor Resisting a Public Officer (20 CRS 51426); however, we reverse the 14 July 2021 Judgment for the conviction of Possession of a Firearm by a Felon (20 CRS 51425) and remand this matter for resentencing for Misdemeanor Resisting a Public Officer.

NO ERROR IN PART; REVERSED IN PART. REMANDED FOR RESENTENCING.

Judges COLLINS and WOOD concur.